UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MABEL BAILEY  )<br>  *Plaintiff*,  )<br>  )<br>v.  )<br>  )<br>ANDREW M. SAUL, Commissioner of  )<br>the Social Security Administration  )<br>  *Defendant*.  ) | 3:20-CV-00051 (KAD)<br><br><br><br><br><br>March 2, 2021 |

**MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER OR TO REMAND TO THE COMMISSIONER (ECF NO. 13) AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER (ECF NO. 14)**

Kari A. Dooley, United States District Judge

Mabel Bailey ("Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of Defendant Andrew M. Saul, Commissioner of the Social Security Administration (the "Commissioner"), denying her application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act") and her application for supplemental security income ("SSI") pursuant to Title XVI of the Act, or in the alternative, to remand this matter for further proceedings. The Commissioner moves for an order affirming his decision. For the reasons set forth below, the Court DENIES the Plaintiff's motion to reverse the decision of the Commissioner or in the alternative to remand to the Commissioner and GRANTS the Commissioner's motion to affirm the decision.

**Standard of Review**

A person is "disabled" under the Act if that person is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). A physical

or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 42 U.S.C. § 1382c(a)(3)(D). In addition, a claimant must establish that her "physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment" or combination thereof that "must have lasted or must be expected to last for a continuous period of at least 12 months"; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform her past relevant work; and (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform in light of her RFC and her education, age, and work experience. 20 C.F.R. §§ 404.1520 (a)(4)(i)-(v); 404.1509; 20 C.F.R. §§ 416.920(a)(4)(i)-(v); 416.909. The claimant bears the burden of proof with respect to Step One through Step Four, while the

Commissioner bears the burden of proof as to Step Five. *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). It is well-settled that a district court will reverse the decision of the Commissioner "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotations marks and citation omitted). "In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (quotation marks and citation omitted). "Under this standard of review, absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The Court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012) (*per curiam*) (quotation marks and

citation omitted). Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

**Procedural History**

On September 26, 2016, Plaintiff, proceeding *pro se*, filed applications for DIB and SSI, respectively, pursuant to Title II and Title XVI of the Act, alleging an onset date of January 1, 2013. The claims were denied initially on February 21, 2017, and upon reconsideration on August 4, 2017. Thereafter, a hearing was held before an ALJ on July 6, 2018. On October 26, 2018, the ALJ issued a written decision denying Plaintiff's applications.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 1, 2013. At Step Two, the ALJ determined that Plaintiff had medically determinable severe impairments consisting of arthritis of the legs; asthma; depressive, bipolar and related disorders; and obesity. The ALJ also determined that the Plaintiff had non-severe impairments to include pre-diabetes and hypertension. At Step 3, the ALJ determined Plaintiff's severe impairments do not meet or medically equal the listings in 20 CFR Part 404, Subpart P, Appendix 1. At Step Four, the ALJ determined that the Plaintiff had the following RFC:

> [Plaintiff has the RFC] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: 1) No left or right foot controls. 2) Only occasional bending, balancing, twisting, squatting, kneeling, crawling, and climbing, and no climbing of scaffolds, ropes or ladders. 3) She needs to avoid hazards such as dangerous machinery, heights, and vibrations, including driving. 4) She needs an environment free from concentrated poor ventilation, dust, fumes, gases, odors, humidity, wetness, and temperature extremes. 5) She needs occasional interaction with the public, coworkers, and supervisors, and she is capable of simple, routine, repetitive work that does not require teamwork or working closely with the public.

(R. 27). The ALJ further found that Plaintiff was unable to perform any past relevant work as a home health aide. At Step Five, the ALJ concluded that there are a significant number of jobs in the national economy that Plaintiff could perform given the limitations identified in the RFC. Accordingly, the ALJ found that Plaintiff was not disabled at any time between the alleged onset date through the date of the decision within the meaning of the Act.

Plaintiff retained counsel on January 3, 2019. Thereafter, on November 12, 2019, the Appeals Council denied Plaintiff's request for review, thereby rendering the ALJ's October 26, 2018 decision final. This appeal followed.

**Discussion**

Plaintiff argues that the ALJ erred in various ways. Principally, Plaintiff argues that the ALJ failed to develop the record or otherwise afford her a fair and full hearing especially in light of her *pro se* status. Plaintiff further argues that the ALJ erred by failing to incorporate a consultative examiner's findings into her RFC and to apply the appropriate Medical-Vocational Guidelines at Step 5 of the analysis. For the reasons that follow, none of Plaintiffs arguments are persuasive and the Court affirms the Commissioner's decision.

**Development of the Record and Full and Fair Hearing**

"Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (citing *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982)). "[W]here there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history 'even when the claimant is represented by counsel or . . . by a paralegal.'" *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (citing *Perez*, 77 F.3d at 47). And "[w]hen a claimant properly waives his right to counsel and

5

proceeds *pro se*, the ALJ's duties are heightened." *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009) (internal quotation marks omitted). The ALJ has a duty "to scrupulously and conscientiously probe into, inquire of, and explore all the relevant facts," *see DeChirico v. Callahan*, 134 F.3d 1177, 1183 (2d Cir. 1998), and to ensure that the record is adequate to support his decision, *see*, *e.g.*, *Rosa*, 168 F.3d at 82–83 (remanding where ALJ relied on medical records containing significant gaps); *Pratts v. Chater*, 94 F.3d 34, 37–38 (2d Cir. 1996) (same).

"The ALJ's duty to develop the administrative record encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Devora v. Barnhart*, 205 F. Supp. 2d 164, 173 (S.D.N.Y. May 22, 2002) (citing *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990); *Echevarria*, 685 F.2d at 755–56). Remand for a new hearing is appropriate when the ALJ fails to adequately develop the record. *Rosa*, 168 F.3d at 80–83.

Notwithstanding, "'where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.'" *Lowry v. Astrue*, 474 F. App'x 801, 804 (2d Cir. 2012) (summary order) (quoting *Rosa*, 168 F.3d at 79 n.5). "When an unsuccessful claimant files a civil action on the ground of inadequate development of the record, the issue is whether the missing evidence is significant." *Santiago v. Astrue*, No. 3:10-cv-937(CFD), 2011 WL 4460206, at *2 (D. Conn. Sept. 27, 2011) (citing *Pratts*, 94 F.3d at 37–38). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Indeed, "[t]he plaintiff in the civil action must show that he was harmed by the alleged inadequacy of the record[.]" *Santiago*,

6

2011 WL 4460206, at *2. For example, "[t]o demonstrate prejudice [the plaintiff] must show that the additional medical reports would undermine the ALJ's decision." *Lena v. Astrue*, No. 3:10CV893 SRU, 2012 WL 171305, at *9 (D. Conn. Jan. 20, 2012) (internal quotation marks and brackets omitted). "'Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand.'" *Id.* (quoting *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)).

### *Development of the Record*

Plaintiff argues that the ALJ erred by failing to obtain certain treatment records, specifically: (1) mental health treatment notes from Connecticut Counseling, Connecticut Renaissance, and the Southwest Community Health Center Intensive Outpatient Program ("Southwest IOP"); (2) treatment notes from New Reach; (3) Chynna Edmonds' treatment notes; and (4) orthopedic and pain management treatment notes from 2017-2018. In response, the Commissioner argues that the ALJ fulfilled his duty by obtaining additional records from treating sources Plaintiff identified at the hearing and that, in any event, Plaintiff failed to demonstrate prejudice. The Court agrees with the Commissioner.

### *Mental Health Treatment Notes*

Plaintiff first asserts that the ALJ failed to obtain treatment notes from the Southwest IOP, where she was treated for two years around 2015, and Connecticut Renaissance, where she had been treated since 2015. Plaintiff also argues that the ALJ should have obtained treatment notes from Connecticut Counseling. However, Plaintiff makes no argument or showing that these records are significant to her claims or even what they would likely reveal. She simply identifies references to these various providers within the record and concludes that these references triggered an obligation on the part of the ALJ to determine whether these providers had records

7

and if so to obtain them. With respect to the Southwest IOP and Connecticut Renaissance, Plaintiff points to a notation made by LCSW Suzanne Spinella-Curto on an intake form suggesting that Plaintiff had received treatment in 2015 for substance abuse at "Southwest Chc IOP" and for psychiatric treatment at "CT Renaissance." (R. 1483). With respect to Connecticut Counseling, Plaintiff points to an April 27, 2015 treatment note suggesting that she "gave verbal consent to speak to Diana at Connecticut Counseling to verify that she is enrolled in an IOP and [is] compliant with program," (R. 855) and a June 26, 2017 treatment note in which LCSW Spinella-Curto referred Plaintiff to Connecticut Counseling for an intensive outpatient program for "pcp use as well as [a] psych[ological] eval[uation]," (R. 1492).[1]

To the extent that records from these treatment providers exist, Plaintiff fails to demonstrate the prejudice she suffered by their omission. The ALJ found Plaintiff's mental impairments to be severe and incorporated non-exertional limitations into her RFC as a result. (R. 26, 27). Thus, the mere existence of other mental health treatment records, especially those that appear to be focused specifically on treating the Plaintiff's substance abuse issues, does not undermine the ALJ's decision. The ALJ was clearly well-aware of Plaintiff's mental health issues and considered them when formulating the RFC. Importantly, the ALJ was aware that Plaintiff had mental health issues during the time periods for which Plaintiff argues that records are missing. For example, the ALJ notes in his decision that Plaintiff was diagnosed with depression by Dr. Douglas Olson on October 3, 2014 and that Plaintiff "had a long history of depression dating to age fifteen[.]" (R. 30). The ALJ also noted that LCSW Spinella-Curto diagnosed Plaintiff with

---

[1] Other treatment notes suggest that Plaintiff never went to Connecticut Counseling in 2017. For example, on July 10, 2017, LCSW Spinella-Curto notes that "CT Counseling would like client to call them directly to arrange a phone screening for their OP services. Client provided with contact information and will give CT Counseling a call." (R. 1495). In LCSW Spinella-Curto's subsequent treatment notes, CT Counseling is not mentioned and a November 17, 2017 treatment note indicates that Plaintiff "will be given information for CT Counseling," (R. 1532), suggesting that she did not go to CT Counseling when previously referred by LCSW Spinella-Curto.

generalized anxiety disorder and major depressive order and provided her with counseling in 2017. (R. 30). Without offering any indication as to what they may reveal, Plaintiff has not satisfied her burden of showing that the additional mental health records would have undermined or altered the ALJ's decision. This is especially so when the ALJ made his determination based on a record that adequately documented the extent of Plaintiff's mental health issues throughout 2015 and 2016. For example, Plaintiff repeatedly denied being bothered by feeling depressed (R. 810, 1013, 1020, 1051, 1137, 1154, 1214, 1247, 1450) and medical providers repeatedly indicated that Plaintiff was either "oriented to all spheres and [her] affect and mood [was] appropriate" (R. 1022, 1053, 1268) or that she was "alert and cooperative; [had a] normal mood and affect; [and had a] normal attention span and concentration." (R. 831, 856, 899, 924, 945, 984, 1010, 1014, 1067, 1139, 1155, 1181, 1215, 1249, 1454).

Accordingly, Plaintiff fails to establish that the ALJ failed to adequately develop the record or that the allegedly omitted records would have undermined the ALJ's decision regarding the extent of her mental impairments.

### *New Reach*

Plaintiff next argues that the ALJ should have obtained records from New Reach, "a local agency that works with chronically homeless people like [Plaintiff] to provide case management services." (ECF No. 13-1 at 9). Plaintiff points out that New Reach had access to her medical treatment notes, which were sent to New Reach from Norwalk Community Health Center on July 27, 2016. (R. 1270). However, Plaintiff does not explain why these records are significant or how they would have altered the ALJ's decision. *See Shackleford v. Saul*, No. 3:19-CV-01278-TOF, 2020 WL 3888037, at *5 (D. Conn. July 10, 2020) (finding that an alleged gap in treatment records did not form an independent basis for remand where plaintiff did "not raise any arguments as to

9

the significance of these records, nor [did] he suggest that they contain anything beyond what the ALJ considered in her decision"). Further, the ALJ need not obtain records sent to New Reach by Norwalk Community Health Center because those records were obtained directly from Norwalk Community Health Center and were already included in the record. (*See* R. 660–1293); *Lynn v. Comm'r of Soc. Sec.*, No. 11-CV-917 CBA, 2013 WL 1334030, at *12 (E.D.N.Y. Mar. 30, 2013) (noting that "the ALJ is not obligated to obtain duplicative evidence"). Lastly, as discussed and catalogued above, to the extent that New Reach's records relate to Plaintiff's mental health issues, the record was adequate for the ALJ to make his determination. Accordingly, the ALJ did not err in failing to obtain records from New Reach.

### *Chynna Edmonds*

Plaintiff argues that the ALJ should have obtained Chynna Edmonds' treatment notes. According to Plaintiff, Edmonds is a "Master's level Social Worker, and her treatment notes are relevant and important." (ECF No. 13-1 at 9). According to the record, Plaintiff saw Edmonds on two separate occasions in May and June of 2016. The record simply indicates that Plaintiff was presumably receiving counseling from Edmonds and that Edmonds helped to coordinate Plaintiff's appointments with medical providers. (R. 1182, 1242, 1245). For example, in a phone call note in July 2016, it is noted that Plaintiff's "case manager Chyna Edmond" was alerted "regarding appointment and transportation[.]" (R. 1245). Plaintiff offers no further explanation as to the relevance, significance, or existence of any treatment notes by Edmonds. By offering no insight into the significance of Edmonds' records, Plaintiff fails to meet her burden of showing that the ALJ's determination would have been undermined or altered by such records. *See Lena*, 2012 WL 171305, at *9; *Shackleford*, 2020 WL 3888037, at *5.

*Orthopedics and Pain Management (2017-2018)*

Plaintiff argues that the ALJ failed to obtain orthopedic and pain management treatment notes beginning in November 2017 and continuing thereafter. Plaintiff is mistaken. The ALJ obtained these records and proffered them to Plaintiff, but Plaintiff did not respond. (R. 23–24; 356–57). Indeed, Plaintiff testified that she was seeing Dr. Best, an orthopedic doctor, (R. 47–48), so the ALJ obtained Dr. Best's treatment records and they are included in the record (R. 1599–1602). Similarly, Plaintiff testified as to her pain management and cane prescription, which appears to have been in reference to her treatment with Norwalk Community Health Center. (R. 48–52). After the hearing, the ALJ obtained treatment notes from Norwalk Community Health Center, including a chart summary indicating that Plaintiff, in November 2017 and beyond, was prescribed aspirin, ibuprofen, and a cane. (R. 1603). The ALJ developed the record by obtaining Plaintiff's orthopedic and pain management treatment notes from after November 2017.

*Full and Fair Hearing*

Plaintiff next argues that she was denied a full and fair hearing because the ALJ (1) did not adequately develop testimony at the July 6, 2018 hearing in which she proceeded *pro se*; (2) did not inform her of her right to cross-examine the vocational expert; and (3) misstated a consultative examiner's findings in his decision.

*Development of Testimony*

Plaintiff argues that the ALJ erred in failing to adequately develop testimony at the hearing. Specifically, Plaintiff argues that the ALJ failed to question Plaintiff about her mental health impairments and did not meaningfully question her case worker, Hattie Doctor.

In light of the ALJ's "affirmative obligation to assist [a] *pro se* claimant in developing [her] case," remand may be appropriate where the ALJ fails to use the hearing as an opportunity to

explore issues "central to the validity of [the claimant's] claim." *Moran*, 569 F.3d at 113 (internal quotation marks omitted). For example, in *Moran*, the Second Circuit found that the ALJ did not adequately develop the *pro se* claimant's hearing testimony. *Id*. There, the ALJ denied one of the claimant's applications upon finding that the claimant had performed substantial gainful activity based on paystubs demonstrating the claimant's work at an orchard. *Id*. at 114. However, the ALJ did not ask the claimant about the work at the hearing to determine whether the claimant performed the work under special conditions, which would have made a finding of "disabled" appropriate. *Id*. The Second Circuit found the ALJ's lack of questioning particularly problematic due to the claimant's "manifest debilitating condition," which explained the "somewhat diffuse testimony at the hearing," and the "scant" record. *Id*. Given these circumstances, the court noted that "it was especially important for the ALJ to help [the claimant] develop a testimonial record of the critical events[.]" *Id*.

Here, at the hearing, the ALJ did not explore Plaintiff's mental health impairments in depth. The ALJ did not ask Plaintiff how her mental health impairments affected here everyday life or her ability to work. While Plaintiff's case worker, Hattie Doctor, testified as to Plaintiff's mental health issues, the ALJ did not elicit testimony much beyond the fact that Plaintiff was seeing a therapist and was on medication for anxiety and depression. (R. 59–60). However, Plaintiff does not explain how further questioning of Plaintiff, or her case worker, would have undermined the ALJ's determination. Unlike in *Moran* where there were clear deficiencies in the record, as discussed above, the record was more than adequate for the ALJ to assess Plaintiff's mental health impairments and determine whether they rendered Plaintiff disabled under the Act. Accordingly, remand to elicit further testimony regarding Plaintiff's mental health impairments is not necessary under the circumstances presented here.

*Cross-examination of the Vocational Expert*

Plaintiff argues that she was not afforded a fair and full hearing because the ALJ did not inform her of her right to cross-examine the vocational expert. Therefore, according to Plaintiff, the vocational expert's testimony is questionable because he was not subject to cross-examination by either the ALJ or Plaintiff. Indeed, Plaintiff appears to accuse the vocational expert of "conjur[ing]" his testimony "out of whole cloth." (ECF No. 13-1 at 12 (internal quotation marks and citation omitted)).

"Claimants have a right to cross-examine vocational experts, though failure to inform claimant of such a right is harmless error if an ALJ vigorously explores for all of the relevant facts himself or herself." *Harris v. Saul*, No. 3:18-CV-2064 (VLB), 2020 WL 1515234, at *9 (D. Conn. Mar. 30, 2020) (internal quotation marks, brackets, and citation omitted). For example, in *Alvarez v. Bowen*, the court found that the *pro se* claimant was prejudiced by the ALJ's failure to inform him of his right to cross-examine the vocational expert where the ALJ posed only one hypothetical question to the vocational expert that failed to adequately describe the claimant's mental and physical impairments. 704 F. Supp. 49, 54 (S.D.N.Y. 1989). Whereas, in *Harris*, the court found no prejudicial error where the ALJ's hypothetical questions posed to the vocational expert reflected the ALJ's ultimate RFC determination. 2020 WL 1515234, at *9.[2]

Here, although the ALJ did not inform Plaintiff of her right to cross-examine the vocational expert, Plaintiff has not identified any prejudice resulting from the ALJ's failure to do so. Rather, unlike the ALJ in *Alvarez* who asked the vocational expert about a faulty hypothetical, the ALJ asked the vocational expert a series of hypotheticals to include "detailed hypotheticals that reflected [the ALJ's] ultimate RFC determination[.]" *Harris*, 2020 WL 1515234, at *9. There

---

[2] In *Harris*, the court also determined that the ALJ had informed the claimant "of the core of her right to cross-examine the vocational expert, namely, to ask him additional questions about limitations." 2020 WL 1515234, at *9.

being no apparent error in the ALJ's questioning of the vocational expert, Plaintiff failed to identify any prejudice that could be remedied through cross-examination of the vocational expert on remand. Accordingly, despite the ALJ's failure to inform Plaintiff of her right to cross-examine the vocational expert, the Court finds that there is no prejudicial error warranting remand.

### *Dr. Adrian Klufas*

On February 8, 2017, Dr. Adrian Klufas performed a consultative physical examination of Plaintiff. (R. 1300–04). Plaintiff argues that she was denied a full and fair hearing because the ALJ misstated Dr. Klufas's findings in his decision. Specifically, Plaintiff identifies the following sentence from the ALJ's decision as problematic: "Dr. Klufas noted that the claimant ambulated without an assistive device with a fairly normal gait, had a negative straight leg raise test, was able to get on and off the examining table independently, and passive range of motion of both ankles were within normal limits." (R. 31). Plaintiff appears to argue that the ALJ misstated Dr. Klufas's findings and that the ALJ should have included Dr. Klufas's additional observations that Plaintiff had, among other issues, an abnormal gait, difficulty with movement, significant stiffness and crepitations on the left knee due to osteoarthritis or degenerative arthritis, and decreased mobility exacerbated due to her weight. (ECF No. 13-1 at 10–11).

In response, the Commissioner argues that Plaintiff failed to show prejudice even if the ALJ misstated Dr. Klufas's findings. As the Commissioner notes, the ALJ found that Plaintiff's arthritis and obesity were severe impairments (R. 26) and limited Plaintiff to a range of light work (R. 27). The Commissioner also points out that the ALJ discussed Plaintiff's limitations in his opinion—"the ALJ cited Plaintiff's complaints of ankle and foot joint pain; mild, below-the-knee edema; the diagnosis of likely knee sprain; and the impact of her weight on her ability to ambulate." (ECF No. 14-1 at 7 (citing R. 28–29)). Thus, the Commissioner asserts that the ALJ appropriately

considered Plaintiff's limitations and incorporated them into the RFC by including the limitation to work that does not include foot controls.

First, as a factual matter, the ALJ did not misstate Dr. Klufas's findings. The ALJ's discussion of Dr. Klufas's findings is an accurate representation of those set forth in Dr. Klufas's consultative examination. (*Compare* R. 29, 31 *with* R. 1303). Further, contrary to Plaintiff's assertion, Dr. Klufas noted that Plaintiff had a "fairly normal gait" not an "abnormal gait." (*Compare* R. 1303 *with* ECF No. 13-1 at 10). At worst, the ALJ did not explicitly mention all of Dr. Klufas's observations. However, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered" and "an ALJ is not required to discuss every piece of evidence submitted." *Brault*, 683 F.3d at 448 (internal quotation marks and citation omitted). In any event, it is clear from his discussion supporting Plaintiff's RFC that the ALJ considered Dr. Klufas's findings beyond those excerpted by Plaintiff. For example, although Plaintiff seems to suggest that the ALJ overlooked Dr. Klufas's finding regarding her arthritis, the ALJ explicitly noted that "Dr. Klufas concluded that the claimant had significant stiffness and crepitations on the left and it appeared to be osteoarthritis or degenerative arthritis." (R. 29). Further, after citing Dr. Klufas's examination regarding Plaintiff's weight, the ALJ specifically noted that "[t]he claimant's weight, including the impact on her ability to ambulate as well as her other body systems, has been considered within the functional limitations determined herein." (R. 30). Lastly, in part based on Dr. Klufas's findings, the ALJ afforded less weight to a medical consultant's finding that Plaintiff's nonmental impairments were nonsevere. (R. 31). Therefore, the ALJ did not misstate or otherwise improperly utilize Dr. Klufas's findings in formulating Plaintiff's RFC. Rather, as the Commissioner argues, it is evident that the ALJ fully and accurately considered them. Thus,

Plaintiff fails to show that the ALJ's consideration of Dr. Klufas's findings was error let alone harmful error. *Shinseki*, 556 U.S. at 409.

### Incorporation of Dr. Ruth Grant's Opinion into Plaintiff's RFC

The ALJ found Plaintiff's severe impairments to include depressive, bipolar, and related disorders. (R. 26). Accordingly, the ALJ included the following limitation in Plaintiff's RFC: "[Plaintiff] needs occasional interaction with the public, coworkers, and supervisors, and she is capable of simple, routine, repetitive work that does not require teamwork or working closely with the public." (R. 27). In fashioning Plaintiff's RFC, the ALJ gave Dr. Ruth Grant's opinion, which resulted from a consultative psychological examination of Plaintiff on February 3, 2017, "great weight." (R. 31; 1294–99). Dr. Grant found that Plaintiff: (1) "can follow and understand simple directions and instructions"; (2) "may have moderate difficulty doing simple tasks independently"; (3) "has moderate difficulty maintaining concentration and attention"; (4) "may have significant difficulty maintaining a regular schedule"; (5) "may have significant difficulty learning a new task"; (6) "may have significant difficulty performing complex tasks independently"; and (7) "may have significant difficulty making appropriate decisions, relating adequately to others, and dealing with stress." (R. 1298).

Plaintiff argues that the ALJ erred by failing to incorporate Dr. Grant's findings into her RFC despite assigning "great weight" to Dr. Grant's opinion. Specifically, Plaintiff argues that the ALJ should have incorporated the following limitations into Plaintiff's RFC: (1) Plaintiff will be off-task due to her moderate difficulty maintaining concentration and attention; (2) absenteeism due to Plaintiff's significant difficulty maintaining a regular schedule; (3) Plaintiff will need reminders and hands-on assistance from a supervisor due to her significant difficulties learning new tasks and making appropriate decisions; and (4) Plaintiff should be limited to work with no

public or co-worker interaction due to her significant difficulties relating adequately to others and dealing with stress.

"It is well-settled that an ALJ may not 'cherry-pick' evidence by improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." *Sena v. Berryhill*, No. 3:17-CV-912 (MPS), 2018 WL 3854771, at *9 (D. Conn. Aug. 14, 2018) (internal quotation marks and citations omitted). However, in fashioning a claimant's RFC, the ALJ's conclusion need "not perfectly correspond with any of the opinions of medical sources cited in his decision," rather, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). It is also important to keep in mind that the Court can only reject the Commissioner's findings of fact "if a reasonable factfinder would *have to conclude otherwise*." *Brault*, 683 F.3d at 448 (quotation marks and citation omitted).

Here, while the ALJ's RFC determination may not perfectly correspond with Dr. Grant's findings, it is not the result of "cherry-picking" or otherwise improper incorporation of Dr. Grant's findings. Rather, the ALJ's RFC determination accounts for the limitations set forth in Dr. Grant's opinion. For example, as the Commissioner argues, the ALJ limited Plaintiff to "simple, routine, repetitive work," which corresponds to Dr. Grant's findings regarding Plaintiff's ability to "follow and understand simple directions" and her difficulties in maintaining concentration, attention, and a regular schedule. (R. 27, 1298); *see*, *e.g.*, *Landers v. Colvin*, No. 14-CV-1090S, 2016 WL 1211283, at *4 (W.D.N.Y. Mar. 29, 2016) ("The determination that Plaintiff is limited to 'simple, repetitive, and routine tasks' accounts for Plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule, and maintaining regular attendance."). Limiting Plaintiff to "simple, routine, repetitive work that does not require teamwork or working

17

closely with the public" also accounts for Dr. Grant's findings that Plaintiff has difficulty dealing with stress, relating to others, learning new tasks, and making appropriate decisions. The work contemplated in the RFC would not require significant interaction with others, learning, or independent decision-making. (R. 27, 1298). Moreover, regarding absenteeism, Dr. Grant found that Plaintiff *may* have significant difficulty maintaining a regular schedule. (R. 1298). It does not follow, as Plaintiff suggests, that the ALJ should have included in Plaintiff's RFC that she *will* have absences due to her difficulty in maintaining a regular schedule. (ECF No. 13-1 at 13); *see Brault*, 683 F.3d at 448. Thus, the Court finds that the ALJ did not err in failing to incorporate Dr. Grant's findings into his RFC determination.

**Medical-Vocational Guidelines**

"At Step Five [of the evaluation process], the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre*, 758 F.3d at 151. "An ALJ may make this determination either by applying the Medical Vocational Guidelines[3] or by adducing testimony of a vocational expert." *Id*. ALJs must apply the Medical-Vocational Guidelines on a case-by-case basis, and if the Medical-Vocational Guidelines accurately reflect a claimant's limitations, then an ALJ may solely use them in assessing the availability of jobs that the claimant can perform. *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986).

Here, Plaintiff argues that the ALJ erred by failing to evaluate her case under the applicable Medical-Vocational Guidelines. Specifically, Plaintiff argues that the ALJ should have found her to be disabled as of July 21, 2016 pursuant to Rule 201 of the Medical-Vocational Guidelines because of her semi-skilled previous work, limited education, and age category[4]. *See* 20 C.F.R. pt.

---

[3] *See* 20 C.F.R. pt. 404, subpt. P, app. 2.
[4] Plaintiff turned 50 on July 21, 2016 putting her in the "closely approaching advanced age" category.

404, subpt. P, app. 2 § 201.10. However, as correctly argued by the Commissioner, Plaintiff applies the wrong rule. The ALJ found that Plaintiff had the RFC to perform "light work" not "sedentary work." (R. 27). Accordingly, Rule 202 of the Medical-Vocational Guidelines is applicable to Plaintiff's case rather than Rule 201. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (Rule 201 is applicable to claimants limited to sedentary work; Rule 202 is applicable to claimants limited to light work). And under Rule 202, as explained by the ALJ, "[i]f the [Plaintiff] had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.18 and Rule 202.11." (R. 33). Plaintiff's argument therefore fails. It is worth observing, however, that the ALJ's reliance on the vocational expert's testimony was appropriate in this case in light of his finding that Plaintiff's "ability to perform all or substantially all of the requirements of [light work] has been impeded by additional limitations." (R. 33); *see Suarez v. Colvin*, 102 F. Supp. 3d 552, 567, 581 (S.D.N.Y. 2015) (finding it appropriate for the ALJ to rely on vocational expert testimony when "additional limitations" impeded claimant's ability to perform all or substantially all of the requirements of light work); *Lewis v. Colvin*, 548 F. App'x 675, 678 (2d Cir. 2013) (summary order) (noting that vocational expert testimony is required when the claimant's non-exertional limitations significantly limit the range of work permitted by the claimant's exertional limitations (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

**Conclusion**

For the foregoing reasons, the Court DENIES the Plaintiff's motion to reverse the decision of the Commissioner or to remand to the Commissioner and GRANTS the Commissioner's motion to affirm the decision.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of March 2021.

                                               */s/ Kari A. Dooley*
                                               KARI A. DOOLEY
                                               UNITED STATES DISTRICT JUDGE